

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace60 East 42nd Street,
Suite 2020
New York, New York 10165
Telephone:    (212) 317-1200
Facsimile:    (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

ELIAS ROJAS, JUAN ALEJANDRO,
EDGAR BENJAMIN, MARCOS RAMIREZ
and HILARIO RODRIGUEZ *individually and*
*on behalf of others similarly situated,*

                     *Plaintiffs,*

       -against-

DELIZIA RESTAURANT CORP.(d/b/a
DELIZIA 73 RISTORANTE & PIZZA),
FRANK LIPAROTO and FRANK PECORA,

                     *Defendants.*
--------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Elias Rojas, Juan Alejandro, Edgar Benjamin, Marcos Ramirez and Hilario

Rodriguez individually and on behalf of others similarly situated (collectively the "Plaintiffs"),

by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and

belief, and as against Defendants Delizia Restaurant Corp. (d/b/a Delizia 73 Ristorante & Pizza),

Frank Liparoto, and Frank Pecora (collectively the "Defendants") allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are former employees of Defendants Delizia Restaurant Corp., Frank Liparoto and Frank Pecora.

2.      Defendants own, operate, or control an Italian Restaurant located at 1374 1st Avenue, New York, New York 10021 under the name of Delizia 73 Ristorante & Pizza.

3.      Upon information and belief, Individual Defendants Frank Liparoto and Frank Pecora serve or served as owner, manager, principal or agent of Defendant Delizia Restaurant Corp. and through the corporate entity operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs are present and former employees of Defendants.  They were ostensibly employed as delivery workers and as dishwashers, food preparers and pizza makers.

5.      However, for delivery workers, the daily work performed by each of Plaintiffs entailed additional responsibilities that were not related to deliveries.

6.      At all times relevant to this complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate compensation for the hours over 40 per week that they worked.  Rather, Defendants failed to maintain accurate recordkeeping of their hours worked, failed to pay Plaintiffs appropriately for any hours worked over 40, either at the straight rate of pay, or for any additional overtime premium.  Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

7.    Defendants employed and accounted for several Plaintiffs as delivery workers in their payroll, but in actuality their duties included greater or equal time spent in non-delivery, non-tipped functions such as preparing salads, cutting peppers, sausages, chicken, meatballs, cutting and grating cheese, dishwashing, washing pizza dough mixing containers, sweeping and mopping, cleaning the counter, the oven, tables, bathroom, windows, basement, sidewalk, doors and walls, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker and receiving and stocking deliveries around the basement.

8.    At all times, regardless of duties, Defendants paid delivery workers at the lowered tip-credited rate.

9.    However, under both the FLSA and NYLL Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. §146).

10.    Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records to avoid paying Plaintiffs at the minimum wage rate, and to enable them to pay Plaintiffs at the lower tip-credited rate by designating them delivery workers instead of non-tipped employees.

11.    Plaintiffs now bring this action to recover damages, including but not limited to, unpaid minimum wages and overtime premiums, liquidated damages, interest, attorneys' fees and costs pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the New York Minimum Wage Act, N.Y. Lab. Law §§ 650 *et seq.*, and the spread of hours wage order of the New York Commissioner of Labor, 12 N.Y.C.R.R. § 137-1.7 (2005) ("Spread of Hours Wage Order").

12.     Defendants' conduct extended beyond the Plaintiffs to all other similarly situated employees.  At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

13.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages and overtime wage orders pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 (2006) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

14.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of the Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

16.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district.  The Defendants maintain their corporate headquarters and offices within this district, and Defendants

operate one restaurant located in this district.  Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

### *Plaintiffs*

17.     Plaintiff Elias Rojas ("Plaintiff Rojas" or "Rojas") is an adult individual residing in New York County, New York.  Mr. Rojas  was employed by the Defendants from approximately October 2009 until on or about July 2011.

18.     Plaintiff Juan Alejandro  ("Plaintiff Alejandro" or "Alejandro") is an adult individual residing in Queens County, New York.  Mr. Alejandro was employed by the Defendants from approximately May 19, 2011 until June 23,  2012.

19.     Plaintiff Edgar Benjamin  ("Plaintiff Benjamin" or "Benjamin") is an adult individual residing in New York County, New York.  Mr. Benjamin has been employed by the Defendants from approximately December 2008 until the present date.

20.     Plaintiff Marcos Ramirez ("Plaintiff Ramirez" or "Ramirez") is an adult individual residing in New York County, New York.  Mr. Ramirez was employed by the Defendants from approximately October 2008 until July 9, 2012.

21.     Plaintiff Hilario Rodriguez  ("Plaintiff Rodriguez" or "Rodriguez") is an adult individual residing in New York County, New York.  Rodriguez  was employed by the Defendants from approximately April 2009 until June 30, 2012.

### *Defendants*

22.     Defendants own, operate, or control an Italian Restaurant located at 1374 1st Avenue, New York, New York 10021, under the name of Delizia 73 Ristorante & Pizza, at all times relevant to this complaint

23.     Upon information and belief, Defendant Delizia Restaurant Corp. is a domestic corporation organized and existing under the laws of the State of New York.   Upon information and belief, it maintains its principal place of business at 1374 1st Avenue, New York, New York 10021.

24.     Upon information and belief, Defendant Frank Pecora is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant Frank Pecora is sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporation.  Defendant Frank Pecora possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation.  He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

25.     Upon information and belief, Defendant Frank Liparoto is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant Frank Liparoto is sued individually in his capacity as an owner, officer and/ or agent of the Defendant Corporation.  Defendant Frank Liparoto possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation.  He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

26.     Defendants operate an Italian restaurant located in the Upper East Side of Manhattan, New York.

27.     Defendants maintain as their principal place of business a centralized office, which is located at 1374 1st Avenue, New York, New York 10021 (which is also the location of the restaurant).

28.     The Individual Defendants, Frank Pecora and Frank Liparoto, possess operational control over Defendant Corporation, possess an ownership interest in Defendant Corporation, and control significant functions of Defendant Corporation.

29.     Upon information and belief, Defendants Frank Pecora and Frank Liparoto serve or served as Chairman and/ or Chief Executive Officer of Defendant Corporation.

30.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

31.     Each Defendant possessed substantial control over the Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of the Plaintiffs, and all similarly situated individuals, referred to herein.

32.     Defendants jointly employed the Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

33.     In the alternative, the Defendants constitute a single employer of the Plaintiffs and/or similarly situated individuals.

34.     Upon information and belief, Individual Defendants Frank Pecora and Frank Liparoto operate Delizia Restaurant Corp. as either an alter ego of themselves, and/or fail to operate Delizia Restaurant Corp. as an entity legally separate and apart from their own selves, by among other things

   a. failing to adhere to the corporate formalities necessary to operate Delizia Restaurant Corp. as a corporation,

   b. defectively forming or maintaining the corporate entity of Delizia Restaurant Corp., by among other things failing to hold annual meetings or maintaining appropriate corporate records,

   c. transferring assets and debts freely as between all Defendants,

   d. operating Delizia Restaurant Corp. for their own benefit as the sole or majority shareholder,

   e. operating Delizia Restaurant Corp. for their own benefit and maintaining control over it as a closed corporation,

   f.  intermingling assets and debts of their own with Delizia Restaurant Corp.,

   g. diminishing and/or transferring assets to avoid full liability as necessary to protect their own interests, and

   h. other actions evincing a failure to adhere to the corporate form.

35.     At all relevant times, Defendants were the Plaintiffs' employers within the meaning of the FLSA and New York Labor Law.  Defendants had the power to hire and fire

Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

36.　　In each year from 2008 to the present, the Defendants had gross annual sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

37.　　In addition, upon information and belief, the Defendants and/or their enterprise were directly engaged in interstate commerce.  As example, numerous items that were used in the restaurant on a daily basis were goods produced outside of the state of New York.

### Individual Plaintiffs

38.　　The Plaintiffs are all current and former employees of the Defendants, who were primarily employed in performing a variety of restaurant tasks, such as making deliveries, cutting vegetables and other foods, making pizza sauce, cleaning the restaurant, receiving and putting away food and supply deliveries, cleaning the basement, windows, rugs  and the sidewalk, sweeping and mopping, bringing up dough and other pizza ingredients for the pizza maker, refilling the refrigerator with sodas and juices, dishwashing, preparing foods, and making pizza.

39.　　They seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

### Plaintiff Elias Rojas

40.　　Plaintiff Rojas  was employed by the Defendants from approximately October 2009 until on or about July 2011

41.     Defendants ostensibly employed Plaintiff Rojas as a delivery worker. However, Plaintiff Rojas was also required to perform additional duties including cutting peppers, sausages, chicken, meatballs, cutting and grating cheese, dishwashing, sweeping and mopping, cleaning the windows , the basement, tables, doors and walls, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker, and receiving and stocking deliveries around the basement.

42.     Although Plaintiff Rojas was ostensibly employed as a delivery worker, he spent more than three hours on a daily basis performing non-delivery work throughout his employment with Defendants.

43.     Plaintiff Rojas regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

44.     Plaintiff Rojas' work duties required neither discretion nor independent judgment.

45.     Plaintiff Rojas regularly worked in excess of 40 hours per week.

46.     From approximately October 2009 until approximately February 2011, Plaintiff Rojas worked a schedule from 3:00 p.m. to 2:30 a.m., Mondays, Wednesdays, Thursdays, Fridays and  Saturdays (typically 57.5 hours per week).

47.      From approximately February 2011 to July 2011, Plaintiff Rojas worked from 4:00 p.m. to 1:30 a.m. Mondays through Saturdays (typically 57 hours per week).

48.     Throughout his employment with the Defendants, Plaintiff Rojas was paid his wages in cash.

49.     From approximately October 2009 until February 2011, Plaintiff Rojas was paid $100.00 per week ($20.00 per day).

50. From approximately February 2011 until July 2011, Rojas was paid $150.00 per week ($25.00 per day).

51. Plaintiff Rojas's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

52. Defendants only granted Plaintiff Rojas 15 minute breaks or meal periods before October 2011 and 30 minute breaks after that date.

53. Plaintiff Rojas was never notified by Defendants that his tips would be included as an offset for wages.

54. Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Rojas wages.

55. Furthermore, Defendants did not provide Plaintiff Rojas with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

56. No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Rojas regarding overtime and wages under the FLSA and NYLL.

57. Defendants required Plaintiff Rojas to purchase "tools of the trade" with his own funds—including two bicycles ($250, each) and two locks and chains for $70 each. Thus, the total cost of the "tools of the trade" Plaintiff Rojas was required to purchase as a delivery worker was approximately $640.

### Plaintiff Juan Alejandro

58. Plaintiff Alejandro was employed by the Defendants from approximately May 19, 2011 until June 23, 2012.

59.    At all relevant times, Plaintiff Alejandro's actual work duties included dishwashing, assisting in making the pizza dough, sweeping, cleaning and cutting vegetables, refilling the salad section, assisting the cook in the preparation of food and bringing up any food or other items for the pizza maker.

60.    Plaintiff Alejandro regularly handled goods in interstate commerce, such as food, sodas, and other supplies produced outside the State of New York.

61.    Plaintiff Alejandro's work duties required neither discretion nor independent judgment.

62.    Plaintiff Alejandro  regularly worked in excess of 40 hours per week.

63.    From approximately May 2011 until July 2011, Plaintiff Alejandro worked from 9:00 a.m. to 5:00 p.m. Tuesdays through Sundays (typically 48 hours per week).

64.    From approximately July 2011 to January 2012, Plaintiff Alejandro worked from 9:00 a.m. to 5:30 p.m. Tuesdays  through Sundays (typically  51 hours per week).

65.    From approximately January 2012 to June 23, 2012, Plaintiff Alejandro worked from 3:00 p.m.  to 1:00 a.m. on Mondays, Wednesdays and Thursdays; from 3:00 p.m. to 2:00 a.m. on Fridays and Saturdays and from 3:00 p.m. to 12:00 a.m. on Sundays(typically  61 hours per week).

66.    Throughout his employment with the Defendants, Plaintiff Alejandro was paid his wages in cash.

67.    From approximately May 2011 until July 2011, Plaintiff Alejandro  was paid $450.00 per week.

68.    From approximately July 2011 until June 23, 2012, Plaintiff Alejandro was paid $480.00 per week.

69.     Plaintiff Alejandro's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

70.     Defendants only granted Plaintiff Alejandro 15 minutes for meal periods before October 2011 and 30 minutes after that date.

71.     Furthermore, Defendants did not provide Plaintiff Alejandro with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

72.     No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Alejandro  regarding overtime and wages under the FLSA and NYLL.

*Plaintiff Edgar Benjamin*

73.     Plaintiff Benjamin has been employed by the Defendants from approximately December 2008 until  the present date.

74.     Defendants ostensibly employed Plaintiff Benjamin as a delivery worker. However, Plaintiff Benjamin was also required to perform additional duties including cutting peppers, sausages, chicken, meatballs, cutting and grating cheese, bringing up sodas and refilling the refrigerator, sweeping and mopping, cleaning the basement, refrigerators and rugs, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker and taking out the garbage.

75.     Although Plaintiff Benjamin was ostensibly employed as a delivery worker, he spent more than five hours on a daily basis performing non-delivery work throughout his employment with Defendants.

76.     Plaintiff Benjamin regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

77.     Benjamin's work duties required neither discretion nor independent judgment.

78.     Plaintiff Benjamin regularly worked in excess of 40 hours per week.

79.     From approximately December 2008 until November 2011, Plaintiff Benjamin worked from 3:00 p.m. to 2:00 a.m. on Mondays and Tuesdays; from 9:00 a.m. to 9:30 p.m. on Thursdays; from 3:00 p.m. to 1:00 a.m. on Fridays; from 9:30 a.m. to 9:30 p.m. on Saturdays; and from 3:00 p.m. to 12:00 a.m. on Sundays (typically 65.5 hours per week).

80.     From approximately November 2011 to the present date, Plaintiff Benjamin has worked from 5:00 p.m. to 1:00 a.m. on Mondays and Tuesdays; from 5:00 p.m. to 2:00 a.m. on Fridays; from 3:00 p.m. to 2:00 a.m. on Saturdays; and from 5:00 p.m. to 12:00 p.m. on Sundays(typically 43 hours per week).

81.     Throughout his employment with the Defendants, Plaintiff Benjamin was paid his wages in cash.

82.     From approximately December 2008 until August 2010, Plaintiff Benjamin was paid $120.00 per week ($20 per day).

83.     From approximately august 2010 to November 2011, Plaintiff Benjamin was paid $150 per week.

84.     From approximately November 2011 to the present date, Plaintiff Benjamin has been paid $5 per hour.

85.     Plaintiff Benjamin's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

86.     Defendants only granted Plaintiff Benjamin 15 minute breaks or meal periods before October 2011 and 30 minute breaks after that date.

- 14 -

87.     Plaintiff Benjamin was never notified by Defendants that his tips would be included as an offset for wages.

88.     Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Benjamin's wages.

89.     Furthermore, Defendants did not provide Plaintiff Benjamin with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

90.     No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Benjamin regarding overtime and wages under the FLSA and NYLL.

91.     Defendants required Plaintiff Benjamin to purchase "tools of the trade" with his own funds—including two bicycles ($200 each) $400 in repairs for the bikes and two locks and chains for $70 each. Thus, the total cost of the "tools of the trade" Plaintiff Benjamin was required to purchase as a delivery worker was approximately $870.

*Plaintiff Marcos Ramirez*

92.     Plaintiff Ramirez was employed by the Defendants from approximately October 2008 until July 2012.

93.     Defendants ostensibly employed Plaintiff Ramirez as a delivery worker.

94.     However, Plaintiff Ramirez was also required to perform additional duties including cutting vegetables , sausages,  cutting and grating cheese, dishwashing, cleaning the basement , washing the sidewalk, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker and making pizza sauce.

95.     Although Plaintiff Ramirez was ostensibly employed as a delivery worker, he spent more than five hours on a daily basis performing non-delivery work throughout his employment with Defendants.

96.     Plaintiff Ramirez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

97.     Ramirez "s work duties required neither discretion nor independent judgment.

98.     Plaintiff Ramirez regularly worked in excess of 40 hours per week.

99.     From approximately October 2008 until October 2011, Plaintiff Ramirez  worked from 10:00 a.m. to 10:00 p.m. Sundays through Fridays (typically 72 hours per week).

100.    From approximately November 2011 to July 2012, Plaintiff Ramirez worked from 5:00 p.m. to 1:00 a.m. making pizza on Mondays;  from 11:00 a.m., to 5:00 p.m. making pizza and from 5:00 p.m. to 9:00 p.m. making deliveries on Tuesdays, Wednesdays and Thursdays; from  10:00 a.m. to 9:30 p.m. making deliveries on Fridays and Sundays (typically  51 hours per week).

101.    Throughout his employment with the Defendants, Plaintiff Ramirez was paid his wages in cash.

102.    From approximately October 2008 until approximately April 2010, Plaintiff Ramirez  was paid $120.00 per week ($20 per day).

103.    From approximately April 2010 to November 2011, Plaintiff Ramirez was paid $150 per week.

104.    From approximately November 2011 to the present date, Plaintiff Ramirez  has been paid $10 per hour for making pizza and $5 per hour for making deliveries .

105.    Plaintiff Ramirez "s pay did not vary even when he was required to stay later or

work a longer day than his usual schedule.

106.    Defendants only granted Plaintiff Ramirez 15 minute breaks or meal periods before October 2011 and 30 minute breaks after that date.

107.    Plaintiff Ramirez was never notified by Defendants that his tips would be included as an offset for wages.

108.    Defendants did not account for these tips in any daily, weekly, or other accounting of Plaintiff Ramirez's wages.

109.    Furthermore, Defendants did not provide Plaintiff Ramirez with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

110.    No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Ramirez regarding overtime and wages under the FLSA and NYLL.

111.    Defendants required Plaintiff Ramirez to purchase "tools of the trade" with his own funds—including a bicycle for $160, $500 in repairs for the bike and two locks and chains for $55 each. Thus, the total cost of the "tools of the trade" Plaintiff Ramirez was required to purchase as a delivery worker was approximately $770.

*Plaintiff Hilario Rodriguez*

112.    Plaintiff Rodriguez was employed by the Defendants from approximately April 2009 until July 30, 2012.

113.    At all relevant times, Plaintiff Rodriguez' work duties included making pizza

114.    Plaintiff Rodriguez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

115.    Plaintiff Rodriguez' work duties required neither discretion nor independent judgment.

116.    Plaintiff Rodriguez regularly worked in excess of 40 hours per week.

117.    From approximately April 2009 until approximately October 2011, Plaintiff Rodriguez worked a schedule from 11:00 a.m. to 10:00 p.m. Thursdays through Mondays ; and from 10:00 a.m. to 10:00 p.m. on Wednesdays (typically 67 hours per week).

118.    From approximately November 2011 to June 30, 2012, Plaintiff Rodriguez worked from 11:00 a.m. to 6:00 p.m. on Mondays; from 10:00 a.m. to 9:00 p.m. on Wednesdays and Thursdays;  from 11:00 a.m. to 9:00 p.m. on Fridays and Saturdays; and from 12:00 p.m. to 9:00 p.m. on Sundays (typically 58 hours per week).

119.    Throughout his employment with the Defendants, Plaintiff Rodriguez was paid his wages in cash.

120.    From approximately April 2009 until October 2011, Plaintiff Rodriguez was paid $10.00 per hour.

121.    From approximately November 2011 to June 30, 2012, Plaintiff Rodriguez was paid $11 per hour.

122.    Defendants did not provide Plaintiff Rodriguez  with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked.

123.    No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Rodriguez  regarding overtime and wages under the FLSA and NYLL.\

124.    Defendants required Plaintiff Rodriguez to purchase "tools of the trade" with his own funds—including four polo shirts (for $20 each. Thus, the total cost of the "tools of the trade" Plaintiff Rodriguez was required to purchase as a delivery worker was approximately $80.

### Defendants' General Employment Practices

125.    Defendants regularly required Plaintiffs to work in excess of forty (40) hours per week without paying them the proper minimum and overtime wages or spread of hours compensation.

126.    At all times relevant to this complaint, Defendants maintained a policy and practice of requiring the Plaintiffs and all similarly situated employees to work in excess of forty (40) hours per week without paying them appropriate minimum wage and/or overtime compensation, or spread of hours compensation, as required by federal and state laws.

127.    Plaintiffs, and upon information and belief, all similarly situated employees, were paid week to week at the same flat rate of pay regardless of the actual hours worked.

128.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum and overtime wage rate.

129.    Defendants failed to post required wage and hour posters in the restaurant, and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

130.    All Plaintiffs were paid their wages entirely in cash.

131.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for (1) their full hours worked, (2) for overtime due, and (3) for spread of hours pay.

132.    Defendants also failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

133.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

134.    Defendants failed to inform Plaintiffs that their tips would be credited towards the payment of the minimum wage.

135.    Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

136.    Moreover, at all times Defendants required Plaintiffs who were tipped employees such as delivery workers to perform the jobs of multiple employees in addition to their primary responsibilities. These additional, non-related, and non-tipped duties occupied more than two hours of each Plaintiff's workday.

137.    Defendants paid these Plaintiffs at the lowered tip-credited rate, however Defendants were not entitled to a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever was less) (12 N.Y.C.R.R. § 146).

138.    Many Plaintiffs were employed ostensibly as delivery workers (tipped employees) by Defendants, although their actual duties included greater or equal time spent in non-delivery, non-tipped functions such as preparing salads, cutting peppers, sausages, chicken, meatballs, cutting and grating cheese, dishwashing, washing pizza dough mixing containers, sweeping and mopping, cleaning the counter, the oven, tables, bathroom, windows, basement, sidewalk, doors and walls, bringing up dough, pizza sauce, meatballs and all other ingredients from the basement for the pizza maker and receiving and stocking deliveries around the basement.

139.    New York State regulations provide that an employee cannot be classified as a tipped employee "on any day.. in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56 (e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

140.    Plaintiffs' non-delivery duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated occupations with duties including cutting vegetables and other foods, making pizza sauce, cleaning the restaurant, receiving and putting away food and supply deliveries, cleaning the basement, windows, rugs and the sidewalk, sweeping and mopping, bringing up dough and other pizza ingredients for the pizza maker, refilling the refrigerator with sodas and juices, dishwashing, preparing foods and making pizza.

141.    Since Plaintiffs spent as much as three hours or more of their workday in non-tipped, non-delivery functions, Defendants were not entitled to take a tip credit with respect to their wages.

142.    In violation of federal and state law as codified above, Defendants classified Plaintiffs as tipped employees and paid them below minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate for all the hours they worked.

143.    Defendants employed several Plaintiffs as delivery workers and required them to provide their own locks, chains and bicycles, and refused to compensate them or reimburse them for these expenses.

## FLSA COLLECTIVE ACTION CLAIMS

144.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

145.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at a one and one-half their regular rates for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA.

146.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

147.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

- 22 -

148.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for their employment.

149.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

150.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

151.    Defendants failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

152.    Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

153.    Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

154.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

155.    Defendants, in violation of the FLSA, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

156.    Defendants' failure to pay Plaintiffs and the putative FLSA Class members overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

157.    Plaintiffs have been damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)**

158.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

159.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rates and methods of any compensation in exchange for their employment.

160.    Defendants, in violation of the NYLL, paid Plaintiffs less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

161.    Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

162.    Plaintiffs have been damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF THE OVERTIME PROVISIONS OF THE**
**NEW YORK STATE LABOR LAW)**

163.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

164.    Defendants, in violation of the NYLL and associated rules and regulations, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of N.Y. Lab. Law § 190 *et seq.* and supporting regulations of the New York State Department of Labor.

165.    Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

166.   Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

167.   Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR)

168.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

169.   Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff's spread of hours exceeded ten hours in violation of New York Lab. Law § 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 and 137-3.11.

170.   Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

171.   Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH  CAUSE OF ACTION
### (Violation of the Timely Payment Provisions of the NYLL)

172.   Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

173.   Defendants failed to pay Plaintiff in a timely fashion, as required by NYLL § 191.

174.   Plaintiff has been damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Violation of the Unauthorized Deduction Provisions of the NYLL)

175.   Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

176.   Defendants made unauthorized deductions from Plaintiff's wages in violation of NYLL § 193.

177.   Plaintiff has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)   Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)   Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(c)   Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)   Declaring that the Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)   Declaring that Defendants' violation of the provisions of the FLSA were willful

- 26 -

as to Plaintiffs (including the prospective collective class members);

      (f)     Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

      (g)     Awarding Plaintiffs (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

      (h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

      (i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

      (j)     Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

      (k)     Declaring that the Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages; and any deductions or credits taken against wages;

      (l)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

      (m)     Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

      (n)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred

percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime

compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages

pursuant to NYLL § 198(3);

   (o)  Awarding Plaintiffs (including the prospective collective class members) pre-

judgment and post-judgment interest as applicable;

   (p)  Awarding Plaintiffs (including the prospective collective class members) the

expenses incurred in this action, including costs and attorney's fees;

   (q)  Providing that if any amounts remain unpaid upon the expiration of ninety days

following issuance of judgment, or ninety days after expiration of the time to appeal and no

appeal is then pending, whichever is later, the total amount of judgment shall automatically

increase by fifteen percent, as required by NYLL § 198(4).and

(r)     All such other and further relief as the Court deems just and proper.

Dated: New York, New York
       August 24, 2012

                                        MICHAEL FAILLACE & ASSOCIATES, P.C.


                               By:      _____
                                              Michael Faillace
                                        60 East 42nd Street, Suite 2020
                                        New York, New York 10165
                                        Telephone:  (212) 317-1200
                                        Facsimile:  (212) 317-1620
                                        *Attorneys for Plaintiffs*